UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LOUIS IGNATTI,

                              Plaintiff,

                                                      DECISION AND ORDER

                                                      07-CV-6116L

           v.

WEBSTER CENTRAL SCHOOL DISTRICT,
TRANSPORTATION DEPARTMENT,

                              Defendants.
_____

       Plaintiff Louis Ignatti ("Ignatti") brings this action against the Webster Central School District and its Transportation Department (collectively "the District") alleging that the District terminated his employment in retaliation for his participation in a proceeding before the Equal Employment Opportunity Commission ("EEOC"), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and the New York Human Rights Law, N.Y. Exec. Law §§290 et seq. ("NYHRL").

       The District now moves for summary judgment dismissing the complaint (Dkt. #10). For the reasons that follow, the District's motion for summary judgment is granted, and the complaint is dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

Ignatti was initially hired by the District in October 1997 as an on-call bus driver. He became a full-time bus driver for the District on May 21, 1998.

As a brief summary of the salient facts indicates, Ignatti's tenure with the District was a troubled one. In 1998, a note was placed in Ignatti's personnel file, relating to a complaint that he had left a student alone on a running bus. In 1999, Ignatti was reprimanded on several occasions for making inappropriate comments to a student, speeding, holding students on the bus for an extended period, leaving the bus in the school parking lot with the engine running, and failing to disclose a prior traffic violation to the District. In 2000, Ignatti was warned about unsafe behavior after his bus became stuck in a snowdrift, and was seen by a fellow bus driver dropping off a student at an unauthorized bus stop. In 2002, Ignatti received warnings and admonishments for using inappropriate language in the bus garage, failing to timely arrive to pick up a boys' soccer team, and making an unauthorized copy of an ignition key for one of the buses.

In 2003, Ignatti sent a profanity-laced e-mail to a superior and was required by the District to attend sensitivity training. In 2004, Ignatti was criticized for poor judgment after making a wrong turn on his route and attempting a three-point turn which resulted in the rear bumper of the bus becoming stuck on a bridge embankment. On December 14, 2004, Ignatti was suspended for 20 days without pay for cumulative incidents of unsafe driving, conducting union business at work, making an unauthorized stop, and on several occasions, speeding while driving a school bus.

In 2005, Ignatti was instructed to disclose to the District a medication he was taking which could make him drowsy. From the beginning of 2005 until September 2006, Ignatti was out of work for health reasons. During this time, he was convicted of a traffic violation.

In early March 2006, one of Ignatti's coworkers filed a charge with the EEOC, accusing her supervisor of sexual harassment. The EEOC notified the District of the charge on or about March 23, 2006. The same day, Ignatti signed an affidavit in support of his coworker's complaint, which was submitted to the EEOC. (Dkt. #12, Att. 7, Exh. 31).

After returning to work in September 2006, Ignatti was admonished for failure to replace bus keys in the appropriate place, make required entries in the log book, or conduct proper pre-trip checks of the bus.

On October 3, 2006, a police officer was called to investigate a citizen's complaint that a "pervert," armed with a camera, was hiding in the bushes near R. L. Thomas High School. The officer found Ignatti, who had "called in sick" for his employment with the District, hiding in nearby shrubbery on private property, videotaping the buses coming and going. Ignatti identified himself to the officer, and explained that he believed he was being harassed by the District for not performing a proper pre-check before departing on bus routes, and was attempting to prove that other drivers were committing similar infractions. A few days later, Ignatti was admonished for being disrespectful to a District administrator, and for missing a meeting.

On or about October 20, 2006, Ignatti was suspended without pay. The grounds for the suspension included several enumerated prior performance issues and incidents of unsafe and/or unusual behavior, including the videotaping incident. On November 2, 2006, District Superintendent

Adele Bovard recommended, and the Board approved, Ignatti's termination from employment, based upon the same grounds. Ignatti was informed of that action the following day.

Ignatti filed a charge of discrimination with the EEOC on November 21, 2006, alleging retaliation based upon his participation as a witness in support of an unidentified coworker's EEOC charge, and received a notice of right to sue from the EEOC on November 30, 2006.

On February 26, 2007, Ignatti commenced the instant action, alleging that his termination had occurred in retaliation for making "a statement on behalf of a former co-worker in regards to their supervisor's misconduct," in violation of Title VII and the New York Human Rights Law (Dkt. #1 at ¶¶18, 23).

In or around April 2007, the District requested, and received copies of documents from the EEOC relating to the investigation of the discrimination complaint by Ignatti's coworker. (Dkt. #12, Att. 7, Exh. 32). The documents included Ignatti's supporting affidavit. The District avers that this was the first time it learned that Ignatti had submitted an affidavit, or had otherwise participated in the matter, on his coworker's behalf. (Dkt. #13).

## DISCUSSION

### I. Summary Judgment in Discrimination Cases

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Although courts should be cautious about granting summary judgment in cases where motive, intent or state

of mind are at issue, a common component of discrimination actions, *see Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988); *Montana v. First Federal Savings and Loan Ass'n of Rochester*, 869 F.2d 100, 103 (2d Cir. 1989), "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to… other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985) (summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000), *quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993) (trial courts should not "treat discrimination differently from other ultimate questions of fact").

Retaliation claims are analyzed using the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). On a motion for summary judgment, the plaintiff must first establish a *prima facie* case of retaliation. Once such a showing is made, the burden shifts to the defendant to establish a legitimate, non-retaliatory basis for the complained-of action. If the defendant does so, the burden returns to plaintiff, who must show that the legitimate, non-retaliatory reason articulated by the defendant is a mere "pretext," and that retaliation was more likely than not the reason for the complained-of action. *See Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000); *Gallagher v. Delaney*, 139 F.3d 338, 349 (2d Cir. 1998).

A plaintiff makes out a *prima facie* case of retaliation by showing: (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. *Id.*; *Kessler v. Westchester County Dept. of Soc. Servs.*, 461 F.3d 199, 205-206 (2d Cir. 2006).

For the reasons that follow, I find that Ignatti cannot prove that the District was aware of his alleged protected activity, or demonstrate a causal connection between that activity and the termination of his employment. The District Superintendent and District Transportation Manager (Ignatti's supervisor) have each testified, and Ignatti offers no evidence to dispute, that the District did not learn of the existence of Ignatti's affidavit until at least April 2007, five months after his termination. *See Montanile v. NBC*, 57 Fed. Appx. 27, 28 (2d Cir. 2003) (in order to establish a *prima facie* case of retaliation, plaintiff must show that the employer was aware of plaintiff's protected activity); *Philippeaux v. Fashion Inst. of Tech.*, 1996 U.S. App. LEXIS 33507 at *3 (2d Cir. 1996) (same). Ignatti argues that the District's claim that it did not know about his affidavit until April 2007 is "self-serving," and urges the Court to find that the timing of the District's knowledge is a question of fact which precludes summary judgment. If the Court were forced to choose between two parties' divergent testimony, then it would, of necessity, find that summary judgment is precluded so that the question may be preserved for the finder of fact. However, Ignatti presents no alternative evidence. The District has proffered sworn testimony that it was not aware of Ignatti's protected activity until April 2007, and Ignatti has failed to rebut that evidence with anything but rank speculation that because the District was aware of the coworker's EEOC charge, and the coworker identified Ignatti as a "witness" to her supervisor shortly after filing her complaint, then the District must have deduced that Ignatti had offered supporting evidence to the EEOC.[1] Such

---

[1] Ignatti also claims, for the first time, that he told his supervisor in October of 2007 that he had assisted his coworker with her discrimination claim. Because this allegation conflicts with Ignatti's deposition, wherein he testified that he had no knowledge or proof that anyone in the District was aware of his assistance with the coworker's claim at any time prior to his termination, it must be disregarded. *See Jones v. N.Y. City Health & Hosps. Corp.*, 102 Fed.
(continued...)

conjecture is insufficient to repel a well-founded motion for summary judgment. *See generally Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (it is well-established that a non-movant cannot defeat summary judgment with "unsupported assertions").

Furthermore, Ignatti offers no evidence whatsoever to suggest a causal connection between the affidavit and his termination. Contrary to Ignatti's contention, there is no indication that he was unfairly targeted for disciplinary actions around or after the time he submitted his affidavit to the EEOC. Rather, Ignatti's personnel records reveal a lengthy and consistent history of complaints concerning his failure to abide by District rules and safety regulations, which long predates his alleged protected activity. The record is replete with instances of unsafe and unsatisfactory performance amply supporting the District's decision to fire Ignatti.

Moreover, even assuming *arguendo* that Ignatti had established his *prima facie* case of retaliation, he has not produced sufficient evidence to suggest that the District's reasons for terminating him were a pretext for unlawful retaliation. Specifically, while Ignatti offers additional explanations and background concerning the disciplinary notes and warnings contained in his personnel records, he does not dispute that he engaged in the repeated incidents of inappropriate, unusual and even unlawful conduct which resulted in reprimands, discipline, and ultimately termination. As such, he cannot rebut the District's legitimate, nondiscriminatory reason for terminating his employment.

---

[1](...continued)
Appx. 223, 225 n. 2 (2d Cir. 2004); *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987).

## CONCLUSION

For the foregoing reasons, the District's motion for summary judgment (Dkt. #10) is granted and plaintiff's complaint is dismissed in its entirety, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      April 15, 2009.